JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. 8:26-cv-00495-DOC-ADS                          Date:  June 3, 2026

Title: Providence Mission Hospital et al v. UFCW Unions and Food Employers Benefit Fund

---

PRESENT:THE HONORABLE DAVID O. CARTER, JUDGE

|  Priscilla Deason for Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

---

**PROCEEDINGS (IN CHAMBERS):    ORDER GRANTING MOTION TO REMAND [15]**

Before the Court is the Plaintiff's Motion to Remand the Case to Orange Superior Court (Dkt. 15). After reviewing the parties' briefing, the Court hereby **REMANDS** this case to the Superior Court of California, County of Orange.

### I.    Background

Plaintiffs Providence Mission Hospital, Providence Saint Joseph Medical Center, Providence St. Joseph Hospital, and Providence St. Mary Medical Center ("Plaintiffs") brought suit against Defendant UFCW Unions and Food Employers Benefit Fund ("Defendant") on December 11, 2025 in the California Superior Court for the County of Orange. Plaintiffs brought only state law claims including breach of implied contract and quantum meruit. *See Generally* Dkt. 1-1.

Plaintiffs have a written health care services contract with Anthem Blue Cross which informs their relationships with Anthem Blue Cross, as well as "Other Payors" such as Defendant who have contracted with Anthem Blue Cross. Dkt. 1-1 at 4. This contract compels Plaintiffs to provide medical services to enrollees of Anthem Blue Cross and Other Payors, like Defendants. *Id*. In return, Plaintiffs are reimbursed by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-02397-DOC-JDE                          Date: June 3, 2026
                                                        Page 2

Anthem Blue Cross and Other Payors at the rates set forth in the contract. *Id*. Defendant is not a signatory to the contract, but is a part of the Anthem Blue Cross network so Plaintiffs are required to provide medically necessary services to Defendant's enrollees in return for reimbursement rates set forth in the contract. *Id.* at 5.

Anthem Blue Cross is a non-party to this Action. *Id.* at 4. Plaintiffs submit their bills, reflecting usual and customary total billed charges associated with medical services, to Anthem Blue Cross. *Id.* at 5. Anthem Blue Cross then processes these bills and discounts the rates to those set forth in the contract. *Id*. Finally, Anthem Blue Cross forwards these pricings to Defendants. *Id.*

Defendant reached out to Plaintiffs to ensure that plan enrollees would be covered for medical procedures at Plaintiffs' facilities. *Id*. at 6. Plaintiffs confirmed coverage and at no time did Defendant request Plaintiffs stop services or transfer patients to other healthcare facilities. *Id*. Therefore, Plaintiffs allege that by its conduct, Defendant agreed to pay them the rates set forth in the Anthem Blue Cross contract. *Id.* The usual value of the medically necessary services given to patients affiliated with Defendant totaled at least $2,577,197.59. *Id.* After Plaintiffs submitted the claims for each patient to Anthem Blue Cross, the estimated payment amount was brought down to $1,257,659.35 per the contract. *Id*. at 9. Plaintiffs allege that they were not paid the full amount they were owed and there remains a $538,111.31 outstanding balance. *Id.*

## II.     Legal Standard

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Removal of a case from state court to federal court is governed by 28 U.S.C. § 1441, which provides in relevant part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. This statute "is strictly construed *against* removal jurisdiction," and the party seeking removal "bears the burden of establishing federal jurisdiction." *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988) (emphasis added) (citations omitted).

Federal diversity jurisdiction requires that the parties be citizens of different states and that the amount in controversy exceed $75,000. 28 U.S.C. § 1332(a). For diversity jurisdiction purposes, a corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-02397-DOC-JDE                                    Date: June 3, 2026
                                                                                          Page 3

principal place of business." 28 U.S.C. § 1332(c)(1). The presence of any single plaintiff from the same state as any single defendant destroys "complete diversity" and strips the federal courts of original jurisdiction over the matter. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).

Generally, a removing defendant must prove by a preponderance of the evidence that the amount in controversy satisfies the jurisdictional threshold. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2008). If the complaint affirmatively alleges an amount in controversy greater than $75,000, the jurisdictional requirement is "presumptively satisfied." *Id.* In that situation, a plaintiff who then tries to defeat removal must prove to a "legal certainty" that a recovery of more than $75,000 is impossible. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *Crum v. Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000). This framework applies equally to situations where the complaint leaves the amount in controversy unclear or ambiguous. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996).

A removing defendant "may not meet [its] burden by simply reciting some 'magical incantation' to the effect that 'the matter in controversy exceeds the sum of [$75,000],' but instead, must set forth in the removal petition the underlying facts supporting its assertion that the amount in controversy exceeds [$75,000]." *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995) (quoting *Gaus*, 980 F.2d at 567). If the plaintiff has not clearly or unambiguously alleged $75,000 in its complaint or has affirmatively alleged an amount *less* than $75,000 in its complaint, the burden lies with the defendant to show by a preponderance of the evidence that the jurisdictional minimum is satisfied. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010); *Guglielmino*, 506 F.3d at 699.

While the defendant must "set forth the *underlying facts* supporting its assertion that the amount in controversy exceeds the statutory minimum," the standard is not so taxing so as to require the defendant to "research, state, and *prove* the plaintiff's claims for damages." *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) (emphases added). In short, the defendant must show that it is "more likely than not" that the amount in controversy exceeds the statutory minimum. *Id.* Summary judgment-type evidence may be used to substantiate this showing. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090–91 (9th Cir. 2003); *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). For example, defendants may make mathematical calculations using reasonable averages of hourly, monthly, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-02397-DOC-JDE                                    Date: June 3, 2026
                                                                  Page 4

annual incomes of comparable employees when assessing the amount in controversy in a wrongful termination suit. *Coleman*, 730 F. Supp. 2d. at 1148–49.

If the court lacks subject matter jurisdiction, any action it takes is ultra vires and void. *See Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 101–02 (1998). The lack of subject matter jurisdiction may be raised at any time by either the parties or the court. Fed. R. Civ. P. 12(h)(3). If subject matter jurisdiction is found to be lacking, the court must dismiss the action, *id.*, or remand pursuant to 28 U.S.C. § 1447(c). A court may raise the question of subject matter jurisdiction *sua sponte*. *See Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002).

## III.    Discussion

Plaintiffs move to remand this case to state court. Plaintiffs argue that their state-law claims are not preempted by the federal Employee Retirement Income Security Act ("ERISA") and instead arise independently of ERISA since the claims come from Plaintiffs' contract with Anthem Blue Cross regarding rates for reimbursement, rather than concerning benefits owed to beneficiaries or participants of an ERISA plan. In response, Defendant opposes this motion and argues that Plaintiffs' claims are in fact preempted by ERISA § 502(a) due to Plaintiffs being assigned the benefits of the ERISA plan. Accordingly, Defendant argues that under the doctrine of complete preemption, which applies to ERISA 502(a), federal jurisdiction is proper. The Court disagrees.

### A. Complete Preemption and the *Davila* Test

Under ERISA § 502(a)(1)(B), a civil action may be brought "by a participant or beneficiary" in order "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Accordingly, this necessitates two key inquiries: 1) if the plaintiff bringing such an action is considered either a participant or beneficiary of the ERISA plan or not, and 2) if the purpose of the claim falls under one of the above three categories covered by ERISA § 502.

Importantly, ERISA § 502 generally provides "complete pre-emption." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004). The doctrine of complete preemption applies "where the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common law complaint into one stating a federal claim for purposes for the well-pleaded complaint law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386 at 393 (1987).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-02397-DOC-JDE                                     Date: June 3, 2026
                                                                   Page 5

The Ninth Circuit uses a two-part test derived from *Davila* to determine if a state law claim is completely preempted by ERISA § 502, with two prongs that both must be met for successful preemption. *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 946 (9th Cir. 2009); *Davila,* 542 U.S. 200. The first prong requires that "an individual, at some point in time, could have brought [the] claim under ERISA § 502(a)(1)(B)." *Marin,* 581 F.3d at 946 (quoting *Davila*, 542 U.S. at 210). The second prong requires there to be "no other independent legal duty that is implicated by a defendant's actions." *Id.* Given that "a state-law cause of action is preempted by [section] 502(a)(1)(B) only if both prongs of the test are satisfied," the answer to both inquiries must be in the affirmative for state-law claims to be preempted by ERISA. *Id.* at 947.

### B. Assignment of Benefits: Principles Regarding Providers

Generally, "healthcare provider claims are usually not subject to complete preemption because '[h]ealthcare providers…generally are not considered 'beneficiaries' or 'participants' under ERISA." *Valley Children's Hospital v. CIGNA Healthcare of Cal., Inc*, 790 F. Supp. 3d 940 (E.D. Cal., June 12, 2025) (quoting *Connecticut Sate Dental Ass'n v. Anthem Health Care Plans, Inc.*, 591 F.3d 1337, 1346 (11th Cir. 2009)). However, there are exceptions. First, providers can be assigned benefits of an ERISA plan, and a healthcare provider "as assignee of beneficiaries pursuant to assignments valid under ERISA, has standing to assert the claims of his assignors." *Providence Santa Rosa Memorial Hospital v. Oliver's Market, Inc.*, supra, 25-cv-06388-TLT at p. 8:26-27 (N.D. Cal., Feb 20, 2026) (quoting *Misic. v. Bldg, Serv. Emps. Health & Welfare Tr.*, 789 F.2d 1374, 139 (9th Cir. 1986)). Second, "where recovery is sought pursuant to a dispute about the fair value of the services rendered, the claim 'do[es] not fall within the scope of the assignment.'" *Oliver's Market*, supra, 25-cv-06388-TLT at p. 9:13-15 (quoting *DB Healthcare, LLC v. Blue Cross Blue Shield of Arizona, Inc.,* 852 F.3d 868, 877 (9th Cir. 2017)). So even if a hospital has been properly assigned the benefits of an ERISA plan, there are clear limits as to what claims fall within the scope of such an assignment, and assignees can still only assert ERISA claims that the original assignor could.

Finally, even if a provider has derivative standing under ERISA via assignment, so long as they also have at least one state law claim independent of any ERISA claims being brought under the assignment, they hold two separate claims and accordingly may "assert a claim for benefits either under ERISA, the state law claim, or both." *Valley Children's Hospital,* 790 F. Supp. 3d at 946 (quoting *Connecticut State Dental Ass'n*, 591

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:25-cv-02397-DOC-JDE                                    Date: June 3, 2026
                                                                 Page 6

F.3d at 1346 (citing *Franciscan Skemp*, 538 F.3d 594, 598 (7th Cir. 2008); *Marin Gen. Hosp.*, 581 F.3d at 947)).

### C. **Application of the *Davila* Test: Neither Prong is Satisfied**

Shifting into assessment of the claims brought by Plaintiffs, neither of the *Davila* prongs are satisfied. As to the first prong, Plaintiffs would not been able to bring their claims under ERISA, so that prong is not met. Regarding the second prong, Plaintiffs have brought only state law claims (including claims of breach of implied contract and quantum meruit). *See Generally* Dkt. 1-1. These claims arise out of legal duties independent of ERISA and thus render the second prong not met.

The Court is persuaded by the analysis by our sister courts in both *Marin General Hospital,* 581 F.3d 941, and *Valley Children's Hospital*, 790 F. Supp 3d 940, which closely mirror the case at hand. In *Marin*, the plaintiff—a hospital—received an assignment of benefits from a patient enrolled in an ERISA plan. *Marin* 581 F.3d at 944-45, 947. The plaintiff alleged that they then entered an oral contract with the patient's health insurance provider, who agreed to pay 90% of the hospital's treatment charges for the patient, but then only paid a portion of this agreed-upon amount upon receiving the hospital bill. *Id.* In response, the plaintiff brought suit for a number of state law claims, including breach of contract and quantum meruit. *Id.*

As to the first *Davila* prong in *Marin,* the court noted that the plaintiff did not claim to be owed further payment under the terms of an ERISA plan. *Id*. at 947-948. Rather, the plaintiff sought the remainder of the payment they felt they were owed under a separate oral contract between themselves and the insurance provider. *Id.* at 948. Accordingly, the plaintiff's claims could not have been brought under ERISA § 502(a)(1)(B), as the plaintiff was not seeking to recover benefits owed under an ERISA plan. *Id.* at 949. Moreover, the second prong of the *Davila* test was also not satisfied because "the state-law claims [were] in no way based on an obligation under an ERISA plan, and since they would exist whether or not an ERISA plan existed, they [were] based on 'other independent legal dut[ies]' within the meaning of Davila." *Id.* at 950.

Similarly, in *Valley Children's Hospital*, the plaintiff–also a hospital—was paid only part of what it billed the defendant (CIGNA). 790 F. Supp. 3d at 946. CIGNA in turn claimed that some of the unpaid amounts were not reimbursable under the terms of the patients' ERISA health benefits plans. *Id.* at 947. However, the plaintiff did not allege that they were owed the remainder of payment under the terms of the ERISA plans, but

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-02397-DOC-JDE                                    Date: June 3, 2026
                                                                          Page 7


instead under an implied-in-fact contract with the defendant or a theory of quantum meruit. *Id.* The court emphasized that "regardless of whether the Hospital could have brought a claim under ERISA, the Hospital could not have brought *these claims* under ERISA." *Id.* This is because "the Hospital's claims are based on independent state-law duties: those allegedly imposed by an implied contract or the theory of quantum meruit." *Id.* Therefore, the court concluded that neither of the *Davila* test prongs were satisfied, and that the plaintiff's claims were thus not preempted by ERISA. *Id.* Accordingly, the court in Valley Children's Hospital remanded the case to state court. *Id.*

Notably, in *Marin*, the plaintiff's claim arose from an alleged oral agreement, while here, Defendant has a written agreement with Anthem Blue Cross. Dkt. 1-1 at 4. Defendant argues that Plaintiffs' claims are based on denied reimbursement for specific claims pursuant to the ERISA plan, as opposed to a failure to pay the agreed-upon rates from the written contract. Dkt. 16 at 11. In their argument, Defendant relies on *Lodi Mem. Hosp. Ass'n v. Tiger Lines, LLC*, 2015 LEXIS 110495 at *16 (E.D. Cal. Aug. 20, 2015), where claims were preempted when the plaintiff failed to identify any independent contract, agreement, or obligation aside from the obligations of the ERISA plan. Dkt. 16 at 16. This reliance is misguided. *Lodi* fundamentally differs from the scenario here, where Plaintiffs point to separate bases of obligation, including an implied contract arising from the combination of Defendant's written contract with Anthem, communications with Plaintiffs to confirm coverage, and failure to direct enrollees elsewhere, as well as a *quantum meruit* claim for reasonable and customary value. While considering these arguments, importantly, "the fact that an ERISA plan is an initial step in the causation chain, without more, is too remote of a relationship with the covered plan to support a finding of preemption*." Morris B. Silver M.D., Inc. v. International Longshore & Warehouse etc.,* 2 Cal. App. 5th 793 (2016). Here, Defendant's conduct supports a basis for an implied contract akin to the oral contract in *Marin*, regardless of if the initial precipitating step involved an ERISA plan or if a written contract is involved.

## 1.  The First *Davila* Prong is Not Satisfied

Applying the first prong of the *Davila* test to the situation at hand, Plaintiffs could not have brought their specific claims under ERISA at any point. Akin to both *Marin* and *Valley*, Plaintiffs are hospitals bringing state-law claims for breach of implied contract and quantum meruit. *See Generally* Dkt. 1-1. These claims do not aim to fulfill the terms of an ERISA plan, but rather seek recovery of funds via Defendant's implied contract to pay an agreed-upon reimbursement rate to Plaintiff. This is rooted in Defendant's status as an "Other Payor" and its contract with Anthem for access to its network of providers.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-02397-DOC-JDE                                    Date: June 3, 2026
                                                                  Page 8


Dkt. 1-1 at 4. Accordingly, the claims brought by Plaintiffs could not have been brought under ERISA, as ERISA does not have purview over a separate contract of this sort.

Defendants argue that the benefits of the patients' ERISA plans were assigned to Plaintiffs, and that this means that Plaintiffs' claims are preempted by ERISA § 502(a)'s doctrine of complete preemption. However, the matter of assignment is irrelevant here since Plaintiffs' claims to recover further payment from Defendant arise under Plaintiffs' separate rate agreement contract with Anthem (which Defendant is contracted with). Dkt. 1-1 at 4. The same situation arises in *Oliver's Market*, which involved identical assignment designations on claim forms submitted by a plaintiff-hospital to Anthem, who had an administrative agreement with the defendant of the same nature of Defendant's administrative agreement with Anthem here. *Oliver's Market*, supra, 25-cv-06388-TLT at p. 3:6-17. However, there, the court held that because the plaintiff was not a beneficiary of an ERISA plan, nor were their specific state-law claims about able to be asserted by the patient-assignors, the state-law claims brought by plaintiffs were not able to be brought under ERISA any point, and the first prong was not satisfied. *Id.* at p. 9:21-25. The same situation is seen here.

Moreover, as the Court is only concerned with whether the particular claims at issue could have been brought under ERISA § 502 at some point, it is irrelevant if there are other, entirely separate potential claims that could be brought by Plaintiffs under ERISA through assignment and derivative liability. Thus, the first prong of the *Davila* test is not met. In the interest of thoroughness, the Court proceeds to assess the second prong of *Davila* now.

### 2.  The Second *Davila* Prong is Not Satisfied

As to the second prong of the *Davila* test, the obligations arising from Defendant's contract with Anthem Blue Cross would have existed regardless of the existence of the patients' ERISA plans and arise from an independent legal duty. For example, like the present case, the defendant in *Oliver's Market* failed to pay the plaintiff-hospital their total bill and the plaintiff then sued on theories of breach of implied-in-fact contract and quantum meruit to recover the remaining cost. *Id.* at 3:25-27. In that case, the court looked to the origin of the duty and found that the plaintiff's state law claims arose from duties independent from the right to payment under an ERISA plan. *Id.* at 10:15-16. Here, Plaintiff brings suit under the same theories and seeks to recover costs at the rate in their contract with Anthem Blue Cross, which Plaintiffs allege Defendant agreed to when contracting with Anthem. Dkt. 1-1 at 4-6.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-02397-DOC-JDE                                    Date: June 3, 2026
                                                                               Page 9

Moreover, regardless of if a plaintiff alleges an implied contract or fails to do so entirely, the assessment hinges on the defendant's "words and/or conduct" and if obligations flow "not from the ERISA plan but from an independent legal relationship; namely, an implied-in-law contract between a medical provider and insurers." *Oliver's Market* , supra, 25-cv-06388-TLT at p. 10:21-28 (quoting *John Muir Health v. Windsor Capital Group, Inc*., No. 170cv-05911, 2017 WL 5991862, at *1-4 (N.D. Cal. Dec. 4, 2017)). Here, the claims brought by Plaintiffs similarly rely on an implied contract between a provider (themselves) and insurer (Defendant) and flow from this legal relationship rather than an ERISA plan. See *Marin*, 581 F.3d at 950. Therefore, their claims are based on legal duties independent of ERISA and the second prong of the *Davila* test is also not satisfied.

Both prongs of the *Davila* test must be met for complete preemption under ERISA § 502(a)(1)(B). Because neither is met, the Court does not have subject matter jurisdiction over this case, arising under state law, and accordingly the Court REMANDS the action to the state court.

## IV.    Disposition

For the reasons set forth above, the Court hereby **REMANDS** this case to the Superior Court of Orange County.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                          Initials of Deputy Clerk: pd/kdu
CIVIL-GEN